334 P.2d 1112

Jeff BOURGUET, Plaintiff-Appellant,

v.

ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, Defendant-Appellee.

No. 6387.

Supreme Court of New Mexico.

Jan. 23, 1959.

McAtee, Toulouse & Marchiondo, Arturo Ortega, Albuquerque, for appellant.

208

B. G. Johnson, R. G. Cooper, Albuquerque, for appellee.

McGHEE, Justice.

On December 31, 1958, we filed an opinion, 65 N.M. 200, 334 P.2d 1107, in which we refused to dismiss the appeal in this case on jurisdictional grounds, and we now dispose of the case on its merits.

The plaintiff suffered a hernia attempting to pull in the side of a steel coal car by the use of a turnbuckle while employed by the defendant and sued to recover damages for such injury. At the conclusion of the plaintiff's case in chief the trial court directed a verdict for the defendant on the ground the plaintiff had not made out a case of negligence against the defendant which would entitle him to have the case submitted to the jury. This appeal followed.

The plaintiff was a car repairer working in the shops of the defendant in Albuquerque, New Mexico where he and another car repair man were directed by their foreman to get a burner or heater to be used in heating the sides of a coal car so they could be pulled in and straightened by the plaintiff with the use of a turnbuckle. They were told they would find a turnbuckle at a certain crossing. They procured the burner at the place it was stored and found a turnbuckle at the place indicated, and took them to their designated place of work.

The pattern of work required them to remove the wooden parts from the inside of the car and then to place the turnbuckle in proper position. The one who was to use the burner would get on the ground and heat the steel side. When he deemed it sufficiently hot to be pulled he would call to the workers inside of the car to apply force by turning the handle of the turnbuckle in order to secure leverage and thereby straighten the side of the car. Only one side would be straightened at a time. According to the testimony of the plaintiff, on his first attempt to make the turns he was pulling hard on the handle and felt a sudden, severe pain. He quit work and went to the office to report his injury. The next day the foreman sent him to the hospital where he was examined by a physician who found him suffering from a hernia. There does not appear to be any dispute that the plaintiff suffered an injury which caused a hernia as a result of his turning of the turnbuckle. Certainly there was substantial evidence to sustain a finding to that effect.

The plaintiff claims he was injured due to the negligence of the defendant, first, in failing to furnish proper tools with which to do the work assigned, and second, in failing to furnish sufficient help.

This action was brought under what is commonly known as the Federal Employers' Liability Act, § 51 et seq., 45 U.S.C.A., which provides in part as follows:

"Every common carrier by railroad while engaging in commerce between

any of the several States or Territories, or between any of the States \* \* \* shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce \* \* for such injury \* \* \* resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works boats, wharves, or other equipment. \* \* \*"

By the 1939 amendment to the Act the defense of assumption of risk was abolished, and contributory negligence does not defeat an action but only reduces the award in the proportion such negligence contributes to the injury.

It must be remembered a defendant under this statute is liable in damages for an injury resulting in whole or *in part* from its negligence. In Rogers v. Missouri Pacific Railroad Co., 1957, 352 U.S. 500, 506, 77 S. Ct. 443, 448, 1 L.Ed.2d 493, 499, a statement made a number of times previously was repeated in the following language:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. \* \* \*"

In Urie v. Thompson, 1949, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, it is stated that what constitutes negligence under the Federal Employers' Liability Act is a federal question, not varying in accordance with differing conceptions of negligence applicable under state and local laws for other purposes, and that federal decisional law formulating and applying the concept governs.

The decisions of the United States Supreme Court, construing the statute in question and passing on cases founded thereon, have been so consistent since the 1939 amendment that there is and can be no real dispute as to the law in these cases. It is clear that Court will not tolerate any application of the doctrine of assumed risk, regardless of the manner in which it may be applied or what it may be named. Neither will it tolerate any usurpation by a court of the fact-finding prerogatives of the jury.

Several witnesses testified that the burner was not large enough, and therefore did not heat sufficient space on the side of the car, and also, that the handle with which the turnbuckle was equipped was too short. In addition, the plaintiff testified that the turnbuckle was rusty and therefore harder to turn.

All the witnesses for the plaintiff testified that the work to which they were assigned was at least a three-man job, one to operate the burner and the other two to turn the handle of the turnbuckle. That in turning the handle, sometimes the men were on opposite sides and at other times on the same side. In the latter instance each would be turning it, while if they were on opposite sides at times only one man would be turning the handle from his side and they would alternate in such operation. At other times both would be applying force.

A number of witnesses, who were experienced car repair men and who had worked many years for the defendant, testified they had never before seen or known of the job in question being done by two men. The plaintiff attempted to prove by some of these witnesses it would be dangerous for only one man to be turning the turnbuckle (the burner being required to stay outside on the ground) but this testimony was excluded on the objection of the defendant. However, two witnesses did testify without objection that such would be dangerous, and one went so far as to say because of the danger he would refuse to work at such a job if only two men were assigned to the work.

In Southern Railway Co. v. Welch, 6 Cir., 1957, 247 F.2d 340, we find a case with very similar facts. There the plaintiff's work was to smooth off sharp burrs from the end of reclaimed rails by grinding them with an emery wheel. About 200 rails were ground in one day, each rail weighing approximately 1,600 pounds. The plaintiff was compelled to pull the rails partly crosswise of certain rollers supported by tables three feet high upon which the rails were carried to be cut and ground. As a result of an injury to his back during the pulling operation, plaintiff ruptured a disc between the fourth and fifth vertebrae.

On appeal the defendant urged that no negligence on its part was shown. As to the principal negligence alleged, which was that defendant failed to furnish adequate assistance, the defendant contended the plaintiff was performing "what was always a one-man job", but the court said there was substantial evidence that upon the day of the injury circumstances of particular difficulty existed; that the grit, grime, tar and dirt on the rails were excessive and required additional force to pull the rails into proper position. Under such conditions it had been the practice to assign an extra man to assist on the job and this without request.

The court held that upon this evidence and other issues of fact in the case the findings of the District Court were clearly not erroneous and stated at page 341:

"The employer is under the nondelegable obligation of providing sufficient help for the particular task. Chesapeake & Ohio Railway Company v. Winder, 4 Cir., 23 F.2d 794. No duty

required of the employer for the safety and protection of his servants can be transferred so as to exonerate him from such liability. Northern Pacific Railroad Company v. Herbert, 116 U.S. 642, 647, 6 S.Ct. 590, 29 L.Ed. 755. In this case the Supreme Court cited with approval a decision of the Court of Appeals of New York, Flike v. Boston & Albany Railroad Company, 53 N.Y. 549, which held the railroad liable for an accident caused by an insufficient number of brakemen on the cars of the company. * * * Whether the employer has failed to perform his duty is a question of fact for the jury, * * *."

We think the facts in this case are stronger for the plaintiff than in the one just quoted from. There the plaintiff was on what was ordinarily a one-man job. Here the plaintiff and his fellow worker were put to doing work on what was ordinarily a three-man job, with the plaintiff doing the work of two men. It was also urged in the above case that as the plaintiff did not request help nor make use of help that was available, the defendant was therefore not guilty of negligence. The court further stated in answer to that claim:

" * * * These objections, however, are based essentially on the doctrines of assumption of risk and of contributory negligence. But, since the enactment of 1939, 45 U.S.C.A. Section 51 et seq., 'every vestige of the doctrine of assumption of risk' has been eliminated from the Federal Employers' Liability Act. (Citing cases.)"

We do not believe the defendant may escape its liability because of the failure of the plaintiff to ask for additional help. This was the first time he had been assigned to such work, and on his first act of turning the turnbuckle he was injured. Indeed, we do not believe the authorities so require.

Another case where a workman was injured because of failure to furnish sufficient help is Blair v. Baltimore & Ohio Railroad Company, 1945, 323 U.S. 600, 65 S.Ct. 545, 546, 89 L.Ed. 490. In that case while three workmen were attempting to move a heavy steel pipe with the aid of a small truck, two feet high, the pipe slipped, and two of the workmen released their holds but the petitioner did not. The heavy tube in slipping caused the truck to kick back resulting in petitioner's injury. The Supreme Court of Pennsylvania reversed a judgment for the petitioner holding petitioner had assumed the risk and there was no negligence on the part of the defendant. On review by writ of certiorari, the United States Supreme Court stated among other things:

"To deprive railroad 'workers of the benefit of a jury trial in close or doubt-

ful cases is to take away a goodly portion of their relief which Congress has afforded them.' \* \* \* Because important rights under the Act were involved, we granted certiorari. \* \* \*

"Despite conflicting evidence, there was sufficient evidence to justify the jury in finding that the injury was inflicted under these circumstances. \* \* \*

"We think there was sufficient evidence to submit to the jury the question of negligence posed by the complaint. The duty of the employer 'becomes "more imperative" ·as the risk increases.' \* \* \* The negligence of the employer may be determined by viewing its conduct as a whole. \* \* \* And especially is this true in a case such as this, where the several. elements from which negligence might be inferred are so closely interwoven as to form a single pattern, and where each imparts character to the others.

"The nature of the duty which the petitioner was commanded to undertake, the dangers of moving a greased, 1,000 pound steel tube, 30 feet in length, on a 5 foot truck, the area over which that truck was compelled to be moved, the suitableness of the tools used in an extraordinary manner to accomplish a novel purpose, the number of men assigned to assist him, their experience in such work and their ability to perform. the duties and the manner in which they performed those duties— all of these raised questions appropriate for a jury to appraise in considering whether or not the injury was the result of negligence as alleged in the complaint. We cannot say as a matter of law that the railroad complied with its duties in a reasonably careful manner under the circumstances here, nor that the conduct which the jury might have found to be negligent did not contribute to petitioner's injury 'in whole or in part.' Consequently we think the jury, and not the court should finally determine these issues."

 There are numerous cases which hold that the railroad employer must furnish the employee reasonably safe tools and appliances to do the job assigned. Coal & Coke R. Co. v. Deal, 4 Cir., 1916, 231 F. 604; Pitt v. Pennsylvania R. Co., D.C.Pa. 1946, 66 F.Supp. 443, affirmed 3 Cir., 161 F.2d 733; Morey v. Maine Cent. R. Co., 1926, 125 Me. 272, 133 A. 92; Falyk v. Pennsylvania R. Co., 1917, 256 Pa. 397, 100 A. 961; Chicago, Rock Island & Pacific Railroad Co. v. Lint, 8 Cir., 1954, 217 F. 2d 279; Deckert v. Chicago & Eastern Illinois Railroad Co., 1955, 4 Ill.App.2d 483, 124 N.E.2d 372; Wichita Falls & N. W. R. Co. v. Davern, 1918, 74 Okl. 151, 177 P. 909; Ft. Worth & D. C. R. Co. v. Smithers, Tex.Civ.App.1920, 228 S.W. 637.

The test whether a railroad employer is liable for providing either defective or improper tools to be used is not whether the employer knew them to be unsafe, but whether it exercised reasonable care and diligence to make them safe. Atlantic Coast Line Railroad Co. v. Thompson, 1957, 213 Ga. 70, 97 S.E.2d 135.

Here, we have uncontroverted testimony that the plaintiff was told by his foreman to get a turnbuckle lying on the ground near a certain crossing; that he got one there and that it was rusty and therefore harder to turn. We also have the other testimony relative to the burner and turnbuckle, each not being large enough to do the job satisfactorily, and the short handle to the turnbuckle, added to the testimony that the crew was short one man. Furthermore, no one who testified on the point had ever seen only two men, one on the ground and the other in the car, doing the work to which the plaintiff and his partner were assigned.

We hold there was sufficient evidence introduced by the plaintiff from which the jury could with reason say the accident was caused in whole or in part by one or more of the above claimed acts of negligence on the part of the defendant, or a combination of all of them.

From a reading of the remarks of the trial judge and a consideration of the testimony we are satisfied he in fact applied the doctrine of assumption of risk in this case in addition to finding facts which should have been left to the jury, and thereby fell into error.

The plaintiff also asserts the trial court erred in granting a change of venue in this case from Valencia County to Bernalillo County.

We have examined the findings of the court on this question, and find nothing in the brief which persuades us the trial court erred in granting the change of venue from the favorite county of plaintiffs in negligence and compensation cases to Bernalillo County. This point is without merit.

The judgment will be reversed and the cause remanded to the District Court with instructions to vacate its judgment and grant the plaintiff a new trial.

The plaintiff will recover the costs of this appeal.

And it is so ordered.

LUJAN, C. J., and SADLER, COMPTON and CARMODY, JJ., concur.